IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, HELLS CANYON PRESERVATION COUNCIL and THE WILDERNESS SOCIETY,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>BUREAU OF LAND MANAGEMENT, and SECRETARY OF INTERIOR KEN SALAZAR<br><br>　　　　　Defendants. | Case No.  4:09-CV-507-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

The Court has before it a motion for attorney fees and costs filed by WWP, seeking $105,170 from the defendant BLM. The motion is fully briefed and at issue. The Court will grant the motion in part and award $79,214.00 in fees and costs to WWP against the BLM.

# LITIGATION BACKGROUND

WWP is seeking from the BLM attorney fees it incurred in challenging actions taken by both the BLM and the Forest Service. Due to this unique nature of WWP's motion, it is necessary for the Court to give a full summary of this litigation.

In 2007, WWP filed an action against the Forest Service to stop sheep grazing in the Hells Canyon and Salmon River regions of the Payette and Nez Perce National

**Memorandum Decision & Order - 1**

Forests.  *See WWP v Forest Service CV-07-151-BLW*.  The BLM was not a party to that lawsuit.  WWP claimed that domestic sheep were transmitting a fatal disease to bighorn sheep whose numbers were declining rapidly. WWP sought to enjoin the Forest Service from allowing grazing on six allotments near the bighorn sheep.

A Forest Service Science Panel had concluded, consistent with a study of the Western Association of Fish and Wildlife Agencies, that, while there was not conclusive proof of disease transmission, the preponderance of evidence indicated that there exists a significant risk of disease transmission between domestic sheep and bighorns.  Moreover, the Forest Service had prepared a Risk Analysis in 2006 concluding that sheep grazing on one of the allotments at issue created a "very high risk" for disease transmission to bighorn sheep, and created a "high" risk on four other allotments. The Science Panel noted the broad consensus in the scientific community that domestic sheep and bighorns must be kept separate.

The Nez Perce Tribe had reached the same conclusions, based on studies done by its wildlife biologist.  The Tribe submitted a management plan to the Forest Service that recommended closing all or part of five of the allotments challenged by WWP.

After reviewing the Tribe's recommendation, and WWP's injunction motion, the Forest Service decided to close all or part of five allotments under dispute and conduct an environmental study concerning future grazing and its impact on bighorns.  With regard to the one other allotment – the Allison-Berg allotment – the Forest Service initially allowed grazing, but later banned it (for mature sheep) when the parties showed that

**Memorandum Decision & Order - 2**

bighorn sheep were found on the allotment. The ranchers who were affected sought to keep the allotment open, but the Court denied that request.

In 2009, while the case was still pending and awaiting the Forest Service's environmental study, WWP sought to file an amended complaint that would bring the BLM into the litigation. WWP challenged the BLM for authorizing grazing on the Partridge Creek allotment, which was located adjacent to the closed Forest Service allotments.

The Court denied WWP's motion to file an amended complaint and required them to file a new case. *See Memorandum Decision (Dkt. No. 173) in WWP v Forest Service CV-07-151-BLW.* The Court also ordered that the new case be assigned to the Court, and that all filings related to WWP's motion for injunction against the BLM be deemed filed in the new case.

WWP proceeded to file that case, which is the case now under consideration. *See WWP v BLM CV-09-507-BLW.* In allowing grazing on the Partridge Creek allotment, the BLM relied on the permit holder's adoption of Best Management Practices (BMPs) worked out with the staff of the Idaho Department of Fish and Game (IDFG). Earlier, the Idaho Legislature had passed a law authorizing the IDFG's Director to work with permit holders to craft BMPs and then certify that those BMPs would render the risk of disease transmission "acceptable for the viability" of bighorn sheep. Here, the Director merely certified that the permit holder's adoption of the BMPs "reduces the risk" of disease transmission "to an acceptable level."

**Memorandum Decision & Order - 3**

The Court found the certification "meaningless" because it failed to track the required statutory language. *See Memorandum Decision (Dkt. No. 5)* at p. 16. The BMPs were voluntary, could not be enforced by the BLM, and were not backed by any supporting science. The Forest Service had rejected similar BMPs on adjoining allotments as ineffective, and the Tribe's extensive scientific analysis confirmed the Forest Service's conclusion. The record also established that it was "highly likely" that any infected bighorns would infect not only their immediate companions but also others far up-river, putting at risk the last remaining native bighorn population. Finally, the BLM's own Resource Management Plan, governing grazing on the Partridge Creek allotment, incorporated the Forest Service's Risk Analysis, discussed above, but the BLM decided to rely instead on an outdated management plan over 20 years old.

Based on this analysis, the Court entered a TRO enjoining grazing on the Partridge Creek allotment. Later, the BLM agreed to extend the TRO while the agency completed an environmental analysis.

WWP now seeks $105,170 in attorney fees and costs. The Court will resolve that motion after reviewing the legal standards applicable to WWP's motion.

## LEGAL STANDARDS

Under the EAJA, a court "shall award to a prevailing party" fees and other expenses incurred "in any civil action . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *See* 28 U.S.C. § 2412(d)(1)(A). The BLM agrees that WWP was the prevailing

**Memorandum Decision & Order - 4**

party. Thus, WWP is entitled to fees and costs unless the BLM's position was "substantially justified."

The fact that WWP prevailed raises no presumption that the BLM's position was not substantially justified. *Kali v. Bowen*, 854 F.2d 329, 334 (9th Cir.1988). The position of the BLM is substantially justified if it is "justified to a degree that satisfies a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). That is, it must have a reasonable basis in both law and fact. *Id.* "Put another way, substantially justified means there is a dispute over which reasonable minds could differ." *Gonzales v Free Speech Coalition*, 408 F.3d 613 (9th Cir. 2005). The BLM bears the burden of demonstrating substantial justification. *Thangaraja v. Gonzales,* 428 F.3d 870, 874 (9th Cir. 2005). The Government must show that both its litigation position and the underlying agency decision were substantially justified. *Id*.

## ANALYSIS

The BLM argues that it was substantially justified in relying on the IDFG Director's certification that the BMPs adopted by the permit holder "reduce the risk" of disease transmission "to an acceptable level." The BLM cites various regulations for the proposition that Idaho is the primary manager of wildlife, including bighorns, within its boundaries. *See e.g.* 43 C.F.R. 24.4 (d)(stating that "States therefore possess primary authority and responsibility for management of . . . wildlife on [BLM] lands . . . [while the BLM] has custody of the land itself and the habitat upon which . . . wildlife are dependent").

**Memorandum Decision & Order - 5**

These regulations give States the primary role in creating wildlife management plans. But the regulations clearly do not require a federal agency to abdicate its responsibility to ensure compliance with federal statutes that the agency is charged to enforce.

NEPA prohibits agencies from making any "irreversible or irretrievable commitment of resources" before an environmental study can be completed. *See Metcalf v. Daley*, 214 F.3d 1135 (9th Cir. 2000). The Court found in its earlier decision that "[i]rreversible damage is possible here" because before any study could be completed, the bighorns could be infected by domestic sheep grazing on the Partridge Creek allotment and roam far up-river, infecting other native bighorns and "causing large-scale losses." *See Memorandum Decision, supra* at 14. The record contains no science indicating that the IDFG's BMPs would protect bighorns from this potential for irreversible damage. Indeed, all the science showed the BMPs to be ineffective. Similar BMPs were rejected by the Forest Service on adjoining allotments, and as implemented, they were entirely voluntary and unenforceable. The IDFG Director's certification simply put a meaningless stamp of approval on an ineffective plan. Under the circumstances of this case, the BLM was not substantially justified in relying on the certification by the IDFG Director

The BLM argues, however, that the intermingling of private land with BLM land was an important factor in their decision and the decision of the IDFG Director. The permit holder had private land holdings intermingled with State land and BLM land, and he represented that he would keep grazing his private land even if barred from grazing

**Memorandum Decision & Order - 6**

State and BLM land. The permit holder owned about 36% of the allotment, and the BLM owned about 59%. The IDFG Director and the BLM concluded that it was better to get BMPs in place on all these lands rather than having unrestricted grazing on more than a third of the allotment. But once again, the BMPs were unenforceable as implemented, and ineffective under all the science. A decision resting on the BMPs cannot be deemed substantially justified.

Finally, the BLM argues that it "had factual evidence that contact between bighorn and domestic sheep was not a major problem" on the allotment. *See BLM Response Brief (Dkt. No. 30)* at p. 8. Yet the Tribes' extensive study showed a very high risk of contact, and the BLM's own Resource Management Plan was consistent with that finding. The record contains no evidence to support the BLM's argument that contact would not be a problem on the allotment.

The BLM often has difficult decisions to make. When confronted with unique and complicated situations, the agency may make the wrong call but still be substantially justified in its analysis. The Court has so held in other grazing litigation, denying WWP's motion for attorney fees. *See WWP v Ellis, CV-04-181-BLW* (holding that BLM was substantially justified in its decisions following the Murphy Complex Fire). Focusing more specifically on the state-federal relationship to protect wildlife, there may be cases where the BLM is reviewing a State's wildlife management plan that is the result of difficult choices based on uncertain science and competing experts. The Court expresses no opinion on such cases, because that is not the situation present here. Here, all the

**Memorandum Decision & Order - 7**

science was arrayed against the BLM.  There was no "dispute over which reasonable minds could differ."  *Gonzales v Free Speech Coalition*, 408 F.3d 613 (9th Cir. 2005).

For all of these reasons, the Court finds that the BLM has not carried its burden of showing that its actions were substantially justified.  Hence, the Court finds that WWP is entitled to a fee award, and turns next to the amount of that award.

WWP requests a total fee and cost award of $105,170.  The BLM's principal objection is that $25,956 of that sum was incurred fighting the Forest Service not the BLM.  WWP asserts that its presentation against the BLM was substantially streamlined because it had already done the vast majority of the groundwork in its case against the Forest Service.  WWP also asserts that they are not charging the BLM with all fees incurred against the Forest Service, but only those that carried over directly to this case – that is, the fees incurred to inform the Court about the relevant science and facts concerning the bighorns, disease transmission, and the inadequacy of the BMPs, as well as to prepare expert declarations on these issues.  Recognizing that these fees were incurred in challenging a different defendant, WWP's counsel discounted the fees by 50% to arrive at the $25,956 figure.

There is authority to award fees for work done in an earlier case that is directly related and allows for a more streamlined presentation in the follow-on action.  *G & G Fire Sprinklers, Inc. v. Bradshaw,* 156 F.3d 893, 907-08 (9th Cir. 1998)*, vacated on other grounds by Bradshaw v. G & G Fire Sprinklers, Inc.,* 526 U.S. 1061 (1999).  But in *G & G Fire Sprinklers*, the defendant was the State of California in both cases.  The fees came

**Memorandum Decision & Order - 8**

out of the same pot of State money.  Here, two different federal agencies were involved.  While it is true that federal agencies are all part of the United States, it is also true that each federal agency must pay attorney fees out of its own separate budget.  *See* 28 U.S.C. § 2412(d)(4).  WWP cites no authority that fees may be awarded in this circumstance, and the Court can find none.  Accordingly, the Court will strike those fees from the total.

With regard to the remaining challenges, the Court finds them without merit.  The hourly rates are reasonable given the complexity of the issues and the skill of counsel.  The total hours are also reasonable under all the circumstances.  The Court further finds that the costs incurred were reasonable and necessary.[1]

Consequently, the Court will grant the motion and award fees to WWP of $79,214.00, calculated by subtracting the $25,956 representing fees incurred against the Forest Service from the total requested of $105,170.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for attorney fees (docket no. 24) is GRANTED IN PART AND DENIED IN PART.  It is granted to the extent it seeks $79,214.00 from the defendants.  It is denied in all other respects.

IT IS FURTHER ORDERED, that the motion to strike (docket no. 32) is DENIED.

---

[1] The BLM seeks to strike three declarations filed by WWP of attorneys supporting the hourly rates for Laird Lucas and Lauren Rule.  The Court will deny the motion.  While the three declarations were filed in other cases, the Court finds them accurate and reliable, given the Court's independent knowledge of the legal market in this area.

**Memorandum Decision & Order - 9**



DATED: **March 25, 2013**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision & Order - 10**